UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

AMY GRONSKI,

                Plaintiff,                            Case No. 17-12117

v                                                        Honorable Thomas L. Ludington

ALDI, INC.,

                Defendant.

_____/

**ORDER GRANTING DEFEDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT DEFENDANT'S MOTION TO STRIKE EXPERT REPORT AND TESTIMONY**

On June 28, 2017, Plaintiff Amy Gronski filed a complaint against Defendant Aldi, Inc. Pl.'s Compl., ECF No. 1. In it, Gronski alleged that Aldi interfered with her rights under the Family and Medical Leave Act (FMLA), retaliated against her in violation of her rights under the FMLA, and discriminated against Gronski in violation of the Michigan Persons with Disabilities Civil Rights Act. *Id.* On April 26, 2018, Aldi filed a motion to strike the expert report and testimony of Gronski's expert, Dr. Frank Stafford. Mot. to Strike, ECF No. 17. On May 10, 2018, Aldi filed a motion for summary judgment. Mot. for Summ. J., ECF No. 19.

For the following reasons, the motion for summary judgment will be granted. The motion to strike Dr. Stafford's report and testimony will be denied as moot.

**I.**

**1.**

Gronski first began working at Aldi in April 2012. Gronski Dep., ECF No. 19-2 at 19. She started as a cashier, but was promoted to shift manager within five months. *Id.* at 21. She worked 40 hours a week. *Id.* at 22. From February, 7, 2013 to March 21, 2013, she took leave for surgery.

Decl. of Cheri Bruni, ECF No. 19-9 at 2. Gronski was not eligible for FMLA leave for this surgery because she had been working at Aldi for less than 12 months. *See id.*

In September 2013, store manager June Short filed an Employee Incident and Discipline Form ("EID Form") documenting an infraction by Gronski for substandard work related to Gronski's "efficiency and thoroughness of closes [sic]." ECF No. 19-8 at Ex. A. The next month, Gronski received another infraction, this time for improper handling of cash. *Id* at Ex. B.

In January of 2014, Gronski requested to be transferred to a different Aldi store in order to work closer to home. ECF No. 19-2 at 22. Aldi granted her request and transferred her. *Id.* She worked as a cashier at the new store rather than as a shift manager because the new store did not have any openings for shift managers. *Id.* at 24. On average, she worked 25 to 35 hours a week. *Id.* at 25. During the summer, she would often work 40 hours a week when other employees were on vacation. *Id.*

During that same month of January, her mother became ill with a urinary tract infection and Gronski requested time off to be with her. *Id.* at 41–42. Her managers explained that she could take unpaid leave under FMLA and gave her the number for Cheri Bruni, a benefits assistant at Aldi. *Id.* at 42–43; ECF No. 19-6 at 3. Bruni helped Gronski arrange her FMLA leave. ECF No. 19-2 at 42–43; ECF No. 19-6 at 3. From January 2014 to May 2014, Gronski took two weeks of leave on three separate occasions. ECF No. 19-2 at 44. Each time she returned from leave, she worked in the same position and received the same salary that she had prior to taking leave. *Id.* at 45.

During this time, her store manager, Randy Huggins, spoke to her twice about violating Aldi's line policy. ECF No. 19-3 at Ex. 12. The line policy requires a cashier on duty to open another checkout lane when their line exceeds five people. ECF No. 19-2 at 31; ECF No. 19-3 at

Ex. 7. Gronski had received instruction on this policy as part of her initial employee training. *Id.* After completing the training, she signed a form acknowledging that she was "responsible for following ALDI's policy of opening an additional checklane when the line exceeds five people" and that she understood that "not following any customer service policy may lead to disciplinary action up to and including termination." ECF No. 19-3 at Ex. 7.

After the two discussions with Huggins, Gronski continued to violate the line policy. ECF No. 19-3 at Ex. 12. This led to a meeting with both Huggins and District Manager Rebecca Buckholtz in May 2014 who reminded Gronski that she needed to follow the line policy. *Id.* This meeting was documented in an EID Form. *Id.* Two months later in Gronski's performance evaluation, Huggins again noted that Gronski needed to continue to improve her compliance with the line policy. *Id.* at Ex. 13; ECF No. 19-2 at 57–58.

In August 2014, Buckholtz and Huggins again met with Gronski to discuss her continuing violation of the line policy. ECF No. 19-3 at Ex. 14. The EID Form states that since their previous meeting, Huggins and the rest of the management team "have found Amy disregarding the line policy multiple times." *Id.* It goes on to state that "Due to the frequency of violating the line policy, as well as the multiple conversations we have had with Amy regarding this topic, this is a final conference with Amy. Future issues with not following the line policy will result in termination." *Id.*

**2.**

In February of 2015, Gronski had trigger thumb surgery performed by Dr. Karu. She took leave for the entire month of February. ECF No. 19-2 at 112, 209. Upon returning from leave, she worked in the same position and received the same salary that she had prior to taking leave. *Id.* at 119. Pursuant to her doctor's instructions, she was restricted to work only six hour shifts, which

Aldi accommodated. *Id.* at 121; ECF No. 19-7 at Ex. 5. Her performance evaluation for 2014-2015 by Huggins reported Gronski's continuing issues with not following the line policy. ECF No. 19-3 at Ex. 15.

In November 2015, Gronski's doctor instructed her to not perform repetitive motions with her left hand. ECF No. 19-5 at Ex. 2. Gronski requested an accommodation from Aldi to permit her to use only her right hand, but Aldi denied her request because as a cashier, using both hands was an "essential function" of her job. *See* ECF No. 19-5 at Ex. 3. The next month, Gronski underwent another surgery, this time for osteoarthritis in her left hand. Gronski Dep., ECF No. 19-2 at 148–149. She was on leave from December 2015 to April 2016 and upon her return to work, she worked in the same position and received the same salary that she had prior to taking leave. *Id.* at 157–158. She notified District Manager Skylar VanNatta and Huggins that her doctor recommended that she undergo surgery on her right hand in approximately a year. ECF No. 22-2 at 96–97, 169–170; ECF No. 22-21 at 44; ECF No. 22-14 at 19–20.

**3.**

Though she did not interact with him frequently, Gronski claims that following both her February 2015 and December 2016 surgeries, Huggins treated her differently. ECF No. 22-2 at 95, 123, 143. Gronski alleges that he was frustrated at her for taking time off for her surgeries, her special requests regarding her scheduling, and her slow pace at the cash register. *Id.* at 95, 123. To illustrate this, Gronski in her deposition related an encounter she had with Huggins after her February 2015 surgery. Gronski Dep., ECF No. 19-2 at 124–125. Gronski was exiting a restaurant with her husband and noticed Huggins sitting at the bar with his girlfriend. *Id.* Gronski greeted Huggins and told him that she was not using her health issues to avoid work. *Id.* She explained that her doctor was recommending different restrictions in order to protect her health, not to get

her out of work. *Id.* Gronski alleges that Huggins replied by saying that she should stop complaining to her doctor about her hands so that the doctor would stop giving her restrictions. *Id.*

Gronski also claims that Huggins asked her to attend a work meeting four days prior to the date she was scheduled to return from her December 2015 surgery leave. *Id.* at 95–96. Gronski attended the meeting and while there, Huggins told her that she would be expected to start filling in more for other employees when they were unavailable. *Id.* Gronski told Huggins that she would be unable to take on extra hours because her doctor had told her that it would be a full year before she could have full use of her left hand again. *Id.* at 97.

Gronski further alleges that Huggins would sometimes schedule her to close and open the store on consecutive days. *Id.* at 126–29. Gronski never complained about the scheduling to Huggins. *Id.* at 127–28. Huggins also scheduled other employees for similar shifts. *Id.* Gronski claims that Huggins would sometimes schedule her to work the last four days of a week and then work the first four days of the next week. *Id.* at 86–87. Working eight days in a row was difficult for Gronski because it was painful for her hands. *Id.* She would sometimes call in another employee to take her shifts because of the pain. *Id.* As this became a recurring issue, VanNatta warned Gronski that she would be demoted to a different role if Gronski continued to give away her shifts. *Id.* When Gronski approached Huggins about the scheduling, he told her that he did not realize that he had been scheduling her to work eight days in a row. *Id.* He claimed that he usually did not look at the week prior or week following when creating each week's schedule. *Id.*

Gronski also alleges that if she asked for a sick day, Huggins would require her to find someone to cover her shift. *Id.* at 85. Gronski claims that Huggins did not require this of other employees when they asked for a sick day. *Id.* Gronski further alleges that if she asked for time off, Huggins would schedule her for less hours during the following weeks in retaliation. *Id.* at

133–35. After her December 2015 surgery, Gronski's doctor wanted to place more restrictions on her physical activity while at work. ECF No. 19-2 at 144–145. However, Gronski asked him to refrain from this because she was worried that Huggins would react negatively. *Id.*

In her 2015-2016 Performance Review Form dated July 15, 2016, Huggins and VanNatta noted that Gronski struggled with punctuality. ECF No. 19-3 at Ex. 17. On September 10, 2016, Huggins and VanNatta met with Gronski to discuss this and other performance issues. ECF No. 19-2 at 86; ECF No. 19-5 at Ex. 8. The EID Form states that the meeting was prompted by concerns raised in Gronski's annual performance review and that Huggins and VanNatta had "investigated these concerns to gain more information and to prove legitimacy." ECF No. 19-5 at Ex. 8. The main issues discussed with Gronski included "tardiness, unusual incidences with breaks, cell phone usage on the sales floor, not following direction [sic], giving shifts away, line policy, and an overall poor work qualify." *Id.* The EID Form states that subsequent incidents involving the issues discussed "may result in termination." *Id.*

On January 16, 2017, Huggins and VanNatta met with Gronski and informed her that Aldi was terminating her employment. ECF No. 19-5 at Ex. 9. The EID Form references the prior meeting in September 2016 and states that since then, Gronski "continued to struggle with tardiness, violation of line policy, and poor performance." *Id.*

## II.

Aldi now moves for summary judgment. A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

## III.

### A.

Count I of Gronski's complaint, "Interference in Violation of the Family & Medical Leave Act", is dismissed because Gronski concurred that Aldi's motion for summary judgment succeeds on this issue. ECF No. 22 at 15.

### B.

Count II of Gronski's complaint is for "Retaliation in Violation of the Family & Medical Leave Act." ECF No. 1 at 10. A claim for retaliation arises under 29 U.S.C. §2615(a)(2) which reads, "It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. §2615(a)(2); *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 282 (6th. Cir. 2012). The central issue in a retaliation claim is "whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason." *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir. 1998)).

A retaliatory termination claim is analyzed under the burden-shifting approach articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green.* 411 U.S. 792, 801–05 (1973); *Hamilton v. General Electric Company*, 566 F.3d 428, 435 (6th Cir. 2009). First, a plaintiff must

demonstrate that the following four prima facie elements are met: (1) the employee "engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action." *Hamilton*, F.3d 428 at 435 (quoting *Killian v. Yoruzo Auto. Tenn., Inc.,* 454 F.3d 549, 556 (6th Cir. 2006)) (quotations omitted). The plaintiff's burden in establishing this prima facie case is "not intended to be an onerous one." *Skrjanc v. Great Lakes Power Serv.Co.*, 272 F.3d 309, 315 (6th Cir. 2001).

If the plaintiff proves these prima facie elements, the burden then shifts to the defendant to provide non-discriminatory reasons as to why the defendant took the adverse employment action. *Id.* To carry this burden, a defendant "must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful [retaliation] was not the cause of the employment action." *Id.* (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07) (citations and quotations omitted).

If the defendant is able to articulate a legitimate, non-retaliatory reason for the adverse employment action, the burden shifts back to the plaintiff who must demonstrate that defendant's proffered non-discriminatory reason was pretext for unlawful retaliation. *Id.* A plaintiff can rebut the employer's proffered reason by showing that (1) it had no basis in fact, (2) did not actually motivate the adverse decision, or (3) was insufficient to warrant the adverse decision. *Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012). Although temporal proximity between the protected FMLA activity and the adverse decision can be sufficient to establish Plaintiff's prima facie case, such temporal proximity alone cannot establish pretext. *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 317 (6th Cir. 2001).

**1.**

Gronski claims that Aldi knew that she would be requesting FMLA leave for surgery at the beginning of 2017, but fired her before she was able to do so. ECF No. 22 at 16–17. Gronski's claim is without merit because she cannot fulfill the first prima facie element, that the employee be "engaged in protected activity" under the FMLA. *Hamilton*, F.3d 428 at 435. Gronski has not presented any evidence indicating that she scheduled the surgery for her right hand or started the process to request FMLA leave. In her deposition, VanNatta stated that she spoke to Gronski multiple times about when the surgery would be scheduled, but Gronski never scheduled it. ECF No. 19-4 at 43–44. In his deposition, Huggins recalls that Gronski mentioned the surgery to him, but that "she wasn't sure if she wanted to do it." Huggins Dep., ECF No. 22-14 at 19–20.

Gronski did not schedule the surgery nor did she inform Aldi that it was actually going to occur. She is essentially claiming that she was engaging in a protected FMLA activity solely because she received a recommendation from her doctor to have surgery at some point in the future. Contemplating surgery is not a protected activity under the FMLA.

For the same reasons, Gronski cannot meet the second element of the prima facie claim of putting Aldi on notice that she was engaging in an activity protected by the FMLA. She informed VanNatta and Huggins that her doctor had recommended surgery around the beginning of 2017, but she never scheduled the surgery nor requested FMLA leave. Aldi could not have been on notice that she was engaging in an activity protected under the FMLA because she never actually engaged in the activity itself.[1]

---

[1] Gronski also claims that Aldi knew of her recommended right-hand surgery because of a note from her doctor. Gronski Dep., ECF No. 22-2 at 170; Pl.'s Resp., ECF No. 22 at 11. However, Aldi correctly contends that the proffered doctor's note makes no mention of a future surgery for Gronski. ECF No. 22-23. It only explains Gronski's work restrictions of "[n]o heavy lifting, pushing or pulling" and "no repetitive duties" with her left hand. *Id.* It does not mention Gronski's right hand or any recommended surgery for it. *Id.* This doctor's note cannot be construed as putting Aldi on notice that Gronski was taking leave for surgery as protected by the FMLA.

The third and fourth elements of the FMLA-retaliation claim need not be addressed because she cannot meet either of the first two elements of the prima facie case. For this reason, these last two elements will not be addressed.

If a plaintiff proves its prima facie case, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for its adverse employment action. *Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007). If the defendant provides this, the burden then shifts back to the plaintiff to prove that these proffered reasons were pretext for unlawful retaliation. As stated above, Gronski has not proved her prima facie case. However, as will be explained below, even if she had proved her prima facie case, her claim would be unsuccessful. Aldi has provided non-discriminatory reasons for terminating Gronski's employment and Gronski has not proved that these reasons were pretextual.

**2.**

Aldi has provided reasons for Gronski's termination that are non-discriminatory, including those found in the EID form documenting Gronski's termination. ECF No. 19-5 at Ex. 9. The EID form lists the three main reasons for Gronski's termination as "tardiness, violation of the line policy, and poor performance." *Id.* It also identifies "unusual incidences with breaks, cell phone usage on the sales floor, not following directions, [and] giving shifts away" as reasons for Gronski's termination. *Id.*

**3.**

The burden now shifts back to Gronski to demonstrate that Aldi's reasons were pretext for unlawful retaliation. A plaintiff can demonstrate this by proving that the employer's proffered reason (1) had no basis in fact, (2) did not actually motivate the adverse decision, or (3) was

insufficient to warrant the adverse decision. *Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012).

Gronski first contends that Aldi used her tardiness as pretext for unlawful retaliation. She argues that VanNatta scrutinized Gronski's timecards in order to find a reason to terminate Gronski. ECF No. 22 at 20. However, VanNatta reviewed Gronski's timecards in response to Gronski's recurring tardiness. VanNatta Dep., ECF No. 19-4 at 37–40, 53–54. An employer is permitted to review and evaluate an employee's performance. Doing so cannot be considered disparate treatment when the evidence indicates that the employee's job performance was unsatisfactory. Gronski's contentions are further undermined by the fact that over the course of 88 shifts from April to September 2016, Gronski was late for 23 shifts. ECF No. 19-5 at Ex. 8. Aldi's evidence demonstrates that Gronski struggled with punctuality which is a legitimate, non-discriminatory reason for termination.

Gronski also refutes Aldi's reasoning that she was terminated for violating the line policy. However, her contention is belied by the fact that Aldi documented Gronski's violation of the line policy multiple times in 2014. In early 2014, Huggins spoke to her twice about violating the line policy and then in May 2014, met with her and Buckholtz to discuss it further. ECF No. 19-3 at 12. In July 2014, he noted in Gronski's performance evaluation her continuing struggle with following the policy. *Id.* at Ex. 13; ECF No. 19-2 at 57–58. In August 2014, he and Buckholtz again met with Gronski to discuss the issue. ECF No. 19-3 at Ex. 14. During this final meeting, Buckholtz wrote on the EID Form that future issues with not following the line policy would result in Gronski's termination. These incidents all occurred prior to Gronski's trigger thumb surgery in February 2015. Citing line policy violations as reason for Gronski's termination is not pretextual because it was an issue before Aldi's alleged discriminatory motive arose. These incidents

combined with the incidents following her February and December 2015 surgeries indicate that violating the line policy was a recurring issue for Gronski.

Gronski argues that Aldi targeted her by using the line policy as a method of discipline because it did not do the same against other employees. ECF No. 22 at 21. However, Gronski has not presented adequate evidence to demonstrate an issue of material fact on this question. She relies upon a statement made during Huggins' deposition in which he states that he does not know of any other employee being terminated for violating the line policy. *Id.* at 20. However, she has not presented evidence of other employees violating the line policy and Aldi subsequently failing to discipline them. She presents some photographs in which cashiers allegedly are violating the line policy. ECF No. 22-35. However, there is no evidence proving that Aldi subsequently failed to discipline these employees. Gronski's violation of the line policy was documented and occurring throughout her entire tenure at Aldi's. Gronski has not presented evidence that other employees with a similar history of violating the line policy did not receive similar discipline.

Gronski also argues that VanNatta targeted her by reviewing surveillance video to identify when Gronski violated the line policy. This argument is without merit for the same reasons explained previously in relation to VanNatta's review of Gronski's timecards. VanNatta reviewed video footage of Gronski in response to feedback from Gronski's employees, Huggins, and Gronski's history of violating the line policy. ECF No. 19-4 at 37–40, 53–54. Reviewing Gronski's performance in response to purported violations cannot be considered targeting Gronski.

Gronski further contends that Aldi's reasons for her termination are pretextual because VanNatta referenced Gronski's health issues in her termination notice. ECF No. 22 at 22. However, Gronski disregards the context in which VanNatta references Gronski's health issues.

VanNatta explains the reasons for Gronski's termination in the Employee Incident and Discipline Form ("EID Form") which reads

> When asked why she felt as though she had not improved her ring speed, Amy stated that she was having health issue [sic] with her hands. Amy had surgery on one of her hands December 2015. Since her return at the beginning of April 2016, the District Manager has had multiple conversations with Amy regarding her hands. Each time, Amy had stated that her hands do not affect her work and that she is fully capable of performing all job functions at the expected level.

ECF No. 19-5 at Ex. 9. In her deposition, VanNatta explained that she mentioned Gronski's health issues on the form because she was receiving "mixed signals from Amy regarding…her hands and her wrists." VanNatta Dep., ECF No. 19-4 at 55. Gronski would tell management that her hands were fine, but whenever management gave her feedback, Gronski would claim that her hands were the cause of her unsatisfactory performance. *Id.* at 55–56. Gronski did not request any restrictions after her December 2015 surgery. Gronski Dep., ECF No. 19-2 at 169. Gronski cannot now point to the EID Form and claim that it proves that Aldi terminated her in retaliation for her health issues. The content and context of the EID Form demonstrate that Gronski assured management multiple times that her hands did not interfere with her work and that she was capable of performing her employment duties.

Even if Gronski fulfilled all the elements of a prima facie case (which she has not), her claim would not succeed because she has not demonstrated that Aldi's reasons for terminating her employment were pretextual. Accordingly, summary judgment will be granted for Aldi on Gronski's FMLA-retaliation claim.

## C.

Count III of Gronski's complaint alleges that Aldi discriminated against her in violation of the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA"). To prove a prima facie case of discrimination under the PWDCRA, a plaintiff must show "(1) that he is disabled as defined

in the act, (2) that the disability is unrelated to his ability to perform his job duties, and (3) that he has been discriminated against in one of the ways delineated in the statute." *Peden v. City of Detroit*, 470 Mich. 195, 204. If the plaintiff proves the prima facie elements, the defendant must then present a legitimate non-discriminatory reason for the termination. *Lytle v. Malady*, 458 Mich. 153, 173 (1998). If the defendant can present such a reason, the burden shifts back to the plaintiff who must then prove that the proffered reason is pretextual. *Id.* at 174.

Gronski's PWDCRA claim is unsuccessful for the same reasons her FMLA-retaliation above was unsuccessful. Regardless of whether Gronski can meet her prima facie burden, Aldi has legitimate, non-discriminatory reasons for Gronski's termination and Gronski has not established that these reasons were pretextual. Accordingly, summary judgment will be granted for Aldi on Gronski's PWDCRA claim.

**IV.**

Accordingly, it is **ORDERED** that Defendant's motion for summary judgment, ECF No. 19, is **GRANTED**.

It is further **ORDERED**, that the complaint, ECF No. 1, is **DISMISSED**.

It is further **ORDERED** that the motion to Strike Expert Report and Testimony, ECF No. 17, is **DENIED** as moot.

Dated: October 2, 2018             s/Thomas L. Ludington
                                   THOMAS L. LUDINGTON
                                   United States District Judge

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 2, 2018.

                    s/Kelly Winslow
                    KELLY WINSLOW, Case Manager

---